UNITED STATES DISTRICT COURT

FILED
6|29|2020
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

*for the*

SOUTHERN DISTRICT OF FLORIDA

*at Miami*    3:20cv670-J-39JBT

| | | |
|---|---|---|
| **Robert A. Heghmann and** | : | |
| **Beatrice M. Heghmann,** | : | |
| *Plaintiffs,* | : | |
| | : | COMPLAINT |
| v. | : | |
| | : | |
| Djamel Hafiani, Mary Hafiani, | : | Docket No.: |
| Miriam Hafiani, Jamel Joseph | : | |
| Hafiani, Julia Sarah Hafiani, | : | |
| The Town of Rye, N.H., | : | DEMAND FOR A |
| John Does and Mary Roes 1 : | : | JURY TRIAL |
| thru 6000, | : | |
| *Defendants.* | : | June 24, 2020 |

1

Robert A. Heghmann and Beatrice M. Heghmann for their Complaint allege as follows:

1. This action is predicated upon violations of the Bankruptcy Code, more specifically 11 U.S.C. Sec. 362 (a) & (k) and 11 U.S.C. Sec. 1301, and seeks compensatory and punitive damages for violations of the Automatic Stay in two separate Bankruptcies and the failure of the Defendants to undo the damage done by their violations in either Bankruptcy.

2. The Plaintiffs originally filed this action in the U.S. District Court for the District of New Hampshire where the Plaintiffs and the Defendants resided and where the violations occurred. That Court dismissed the Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction.

3. As part of litigation which occurred in the Bankruptcy Court for the District of New Hampshire and before the Bankruptcy Appellate Panel of the First Circuit, two opinions emerged one of which has *res judicata* effect and a second which while *dicta* has strong precedential effect. After a hearing on August 11, 2003, Bankruptcy Court Chief Judge Mark W. Vaughn ruled on August 19, 2003 that the sale of the estate of Beatrice Heghmann by Djamel Hafiani which occurred during Beatrice's Bankruptcy violated the Automatic Stay. The Defendants did not appeal that decision but the Plaintiffs did appeal another aspect of the decision dealing with an eviction that occurred during Robert's Bankruptcy.

4. On the Plaintiff Beatrice's appeal to the Bankruptcy Appellate Panel, B.A.P. Judge Baroff reviewed the available record of the eviction of the Plaintiffs carried out by the Town of Rye at 237 Grove Road which occurred prior to Beatrice's Bankruptcy, and based upon the available record found that the eviction by the Town of Rye violated the

Automatic Stay in Robert's Bankruptcy. *In re Heghmann*, 316 B.R. 395, 421 (2005) (Boroff, U.S. Bankruptcy Appellate Panel Judge concurring in part and dissenting in part) (Explanation of why a Writ of Possession executed by the Town of Rye based upon a state court Order violated the Stay). Essentially what the Plaintiffs are seeking in this Court is a jury trial on the issues of compensatory and punitive damages before an Article III Judge and a jury which they could not obtain in the First Circuit for two distinct violations of the Bankruptcy Code.

5. Robert A. Heghmann is the husband of Beatrice M. Heghmann and was the first Plaintiff to file for Bankruptcy protection. *In re Robert Heghmann*, BK 03-10815-JMD (Bkrtcy D. N.H.). In Robert's Bankruptcy, Beatrice was a co-debtor as that term is understood under 11 U.S.C. Sec. 1301. At all times relevant hereto he resided at 237 Grove Road, Rye, N.H.

6. Beatrice M. Heghmann is the wife of Robert A. Heghmann and was the second Plaintiff to file for Bankruptcy protection. *In re Beatrice Heghmann*, BK 03-12162-MWV (Bkrtcy D. N.H.) In Beatrice's Bankruptcy, Robert was a co-debtor as that term is understood under 11 U.S.C. Sec. 1301. At all times relevant herein she resided at 237 Grove Road, Rye, N.H.

7. Djamel Hafiani owned land and buildings located at 237 Grove Road, Rye NH. The Plaintiffs Robert and Beatrice Heghmann leased the land and buildings at 237 Grove Road as their residence and lived there with their two minor children. After the eviction, Djamel Hafiani and his family took up residence in the house at 237 Grove Road.

8. Immediately after wrongfully seizing possession of the house and contents at 237 Grove Road Hafiani began to liquidate the estates of both Robert and Beatrice Heghmann. Some of the more valuable contents he sold to consignment vendors for sale elsewhere. One antique Louis Lacome chest valued at between $10,000 and $14,000 he took to Montreal Canada and sold to a Louis Lacome specialty story on Rue de St. Catherine in Montreal. The remainder of the estates he sold at a series of yard sales on the front lawn at 237 Grove Road.

9. In addition to property loss, the Plaintiffs suffered and continue to suffer mental and emotional distress, physical damage from a minor stroke (Robert) and near stroke (Beatrice) and physical deterioration due to the mental and emotional damage they suffered.

10. Djamel Hafiani now a residence at 1224 Fromage Way, Apt. 401, Jacksonville, FL 32225-9006. He also appears to own property at 11551 Dunes Way Drive N, Jacksonville, FL 32225-3814.

11. Mary Hafiani was the wife of Djamel Hafiani but divorced him in 2001. She is the mother of Miriam Hafiani, Jamel Joseph Hafiani and Julia Sarah Hafiani and at all times relevant herein had primary custody of the children. She resides at 551 Seville Parkway, Saint Augustine, Florida, 32806-9037. Mary Hafiani participated in the violation of the Automatic Stay both personally and through her children Miriam, Jamel and Julia.

12. Miriam Hafiani is the daughter of Mary and Djamel Hafiani. Miriam is the same age and size as the Plaintiffs oldest child Victoria. After the wrongful eviction, Miriam participated in the violation of the stay by converting clothes and artifacts belonging to

Victoria to her possession and use. Miriam now resides at 10075 Gate Parkway N, Apt. 2413, Jacksonville, Florida 32246.

13. Jamel Joseph Hafiani is the son of Mary and Djamel Hafiani. Jamel is the same age and size as the Plaintiffs youngest child Robert. After the wrongful eviction, Joseph participated in the violation of the stay by converting clothes and artifacts belonging to Robert to his use and possession. He now resides somewhere in Florida.

14. Julia Sarah Hafiani is the daughter of Mary and Djamel Hafiani. After the wrongful eviction Julia participated in the violation of the stay by converting clothes and artifacts belonging to the Heghmann children. Julia now resides at 10135 Gate Parkway N, Apt 116, Jacksonville, Florida 32216.

15. The Town of Rye is a municipality in the State of New Hampshire. Among its municipal services the Town of Rye maintains a full time Police Department. There is no question that the Town of Rye is subject to the provisions of the Automatic Stay and is liable for violations thereof. The Town of Rye violated the Automatic Stay by failing to have a policy in place to be followed by the Rye Police Department when confronted with a claim of violation of the Automatic Stay and by allowing the Rye Police Department to execute a Warrant of Eviction issued in violation of the Automatic Stay.

16. John Does and Mary Roes 1 through 6000 are the resident taxpayers of the Town of Rye. The reason for naming the resident taxpayers of Rye as defendants is that under New Hampshire law, the municipality and the residents of the municipality are jointly and severally liable for damages caused by the municipality.

17. The liability of the resident taxpayers of Rye is not based solely upon common law or statute. A substantial portion of the property in the estates of Robert and Beatrice

Heghmann was sold in a series of yard sales on the front lawn of 237 Grove Road mainly to resident taxpayers of Rye. Since Chief Judge Vaughn ruled that these sales were in violation of the Automatic Stay, neither the Town of Rye nor any individual resident taxpayers of the Town of Rye have returned a single item sold in violation of the Stay or undertook any action whatsoever to undo the damage of the violation of the Automatic Stays. All of the residents of the Town of Rye, N.H. reside in Zip Codes 03870 and 03871. They are the only residents in those Zip Codes.

18. At all times relevant hereto the Defendants were represented by two of the largest and most prestigious law firms in New Hampshire. None of the Defendants can claim ignorance of the law as a defense.

19. The State of New Hampshire has created a substantive right on behalf of creditors which permits *ex parte*, non-judicial attachment of a Debtor's financial assets which exist in New Hampshire. N.H. Rev. Stat. Ann. Sec. 511-A:1, et seq. An attachment under the statute may be made for number of specified reasons including "establishing *quasi in rem* jurisdiction". N.H. Rev. Stat. Ann. Sec. 511-A:8.

20. To the knowledge of the Plaintiffs this is the only Circuit and the only District which has subject matter and personal jurisdiction over the Hafiani Defendants' and their assets.

21. This action arises under the United States Constitution more particularly Article VI, cl. 3 and the Due Process and Equal Protection Clauses of the 14th Amendment and under federal law including but not limited to 42 U.S.C. Sec. 1983, 28 U.S.C. Sec. 1343 (a)(3), 28 U.S.C. Sec. 1331, 28 U.S.C. Sec. 1334 (a), 18 U.S.C. Secs. 1341 & 1343, 11

U.S.C. Sec. 362 (a) & (k) and 11 U.S.C. Sec. 1301. Venue is proper under 28 U.S.C. Sec. 1391 (b)(3).

22. All of the Defendants had an affirmative duty to undo the offending acts even if they had no actual notice of the bankruptcy at the time the acts were performed. In this context the duty to undo means to the affirmative duty to restore the *status quo ante* once they learned their actions were improper. That obligation arose no later than when Chief Judge Vaughn issued his Order. All of the Defendants knew their obligation to undo the damage done to the Plaintiffs and their obligation to restore their estate immediately. But when the Courts of the First Circuit refused to exercise jurisdiction over the Plaintiffs claim for damages in the District Court the Defendants concluded they were off the hook and did not have to fulfill their legal obligation. In the years since the violations, not one item of the Heghmann estate has been restored. Not one of the Defendants has undertaken any initiative to undo the violations of the Automatic Stay which they are all guilty of. That is why the Plaintiffs have sought justice in this Court.

Count I

Violation of the Automatic Stay

Djamel Hafiani

23. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 22 as if fully set forth herein.

24. Immediately upon filing Bankruptcy Robert Heghmann called counsel for Djamel Hafiani and informed his office of the filing of the Bankruptcy. The moment that

Robert Heghmann informed counsel for Hafiani of the Bankruptcy, Hafiani and his counsel had an obligation to inform the trial judge, Judge Sharon DeVries, of the filing of the Bankruptcy. Instead, on March 17, 2003 in violation of the Automatic Stay Djamel Hafiani obtained the only Default Judgment entered in this case and then a Writ of Eviction. Both the Final Default Judgment and the Writ of Eviction were void.

25. The failure of Djamel Hafiani and his attorney to inform Judge Sharon DeVries of the filing of the Bankruptcy is a clear violation of the Automatic Stay.

Count II

Djamel Hafiani

26. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 25 as if fully set forth herein.

27. Djamel Hafiani went to the Portsmouth District Court to inform Judge Sharon De Vries that the Plaintiff Robert's Bankruptcy had been dismissed and requested a new Writ of Possession bases upon the void Default Judgment of March 17, 2003. Judge De Vries, not realizing her Final judgment was void, re-issued the Writ of Possession.

28. Armed with the Writ of Possession, Hafiani broke into the home at 37 Grove Road, changed the locks and waited for Beatrice Heghmann to return home. When Beatrice Rrturned home Hafiani threatened her and her children and ordered them off the property. When Beatrice refused, he left to get the Rye Police.

29. This action by Djamel Hafiani in breaking in to the house at 37 Grove Road was a clear violation of the Automatic Stay.

Count III

Djamel Hafiani and the Town of Rye

30. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. On May 23, 2003 when Rye Police Chief Gould and Sgt. Walsh went to the home at 237 Grove Road, Robert Heghmann in the presence of Beatrice and his two children, Victoria and Robert, informed Chief Gould and Sgt. Walsh that their action was in violation of the Automatic Stay. Robert Heghmann then tried to give Chief Gould and Sgt. Walsh a copy of the Voluntary Petition and an internet article on the Automatic Stay. The Chief and the Sgt. refused to accept the documents. Instead they insisted on enforcing the Writ of Eviction issued in violation of the Automatic Stay.

32. Robert Heghmann, Beatrice Heghmann and their children were forced to abandon their home on 24 hourws notice. The only property they were able to take with them was what could fit in the trunk of the family car. Everything else they owned was left behind in the house at 237 Grove Road.

33. Immediately upon gaining possession of the house at 237 Grove Road containing all of the possessions of the Heghmann family, Djamel Hafiani began to liquidate the estates of Robert and Beatrice Heghmann.

34. By enforcing the void Writ of Possession, the Rye Police on behalf of the Town of Rye violated the Automatic Stay.

Count IV

Town of Rye and John Does and Mary Roes 1 to 6,000

35. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36. The words and actions of Chief Gould and Sgt. Walsh made it clear that the Town of Rye on May 23, 2003 did not have a procedure in place guiding Town employees as to what procedure they should follow when faced with representations that their actions violated the Automatic Stay.

37. The failure of the Town of Rye to have in place procedures and guidelines for its agents and employees when faced with alleged violations of the Automatic Stay is a clear violation of the Automatic Stay.

Count V

All Defendants

38. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 37as if fully set forth herein.

39. In the weeks and months following the eviction of the Plaintiffs the Defendants plundered the estates of Robert and Beatrice Heghmann and converted or sold all of the worldly possessions of the Heghmann Family all in violation of the Automatic Stay.

40. These conversions and sales violated the Automatic Stay. Everyone who sold items in the estate or purchased them are liable for compensatory and punitive damages.

Count VI

All Defendants

41. The Plaintiffs incorporate and restate all of the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

42. Bankruptcy Chief Judge Mark Vaughn decided the sales of the estate of Beatrice Heghmann violated the Automatic Stay. Despite this ruling none of the Defendants has made any attempt to undo the damage done by the sales of the estates in violation of the Automatic Stay. The failure of the Defendants to undo the violation of the Automatic Stay is itself a violation of the Automatic Stay.

Wherefore, the Plaintiffs demand:

1. A judgment that all of the Defendants have violated the Automatic Stay under the Bankruptcy Code;

2. An award of Compensatory Damages;

3. An award of Punitive Damages;

4. An award of attorney's fees, court costs and filing fees;

5. Any other relief the Court deems reasonable.